**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**03/28/2014** at 10:36:42 AM

Clerk of the Superior Court
By Norri Lau, Deputy Clerk

RUTAN & TUCKER, LLP
Philip J. Blanchard (State Bar No. 192378)
pblanchard@rutan.com
Eliot M. Houman (State Bar No. 278280)
ehouman@rutan.com
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone:  714-641-5100
Facsimile:   714-546-9035

Attorneys for Plaintiff
ARB, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| ARB, INC., <br><br> Plaintiff, <br><br> v. <br><br> ALWAYS PROTECTIVE SERVICES, LLC, a California limited liability company; HEATHER MAGILL, an individual; JEFF SHEA, an individual; TOM MAGILL, an individual; MATTHEW A. FLAMENCO, an individual; and Does 1-20, <br><br> Defendants. | Case No. 30-2014-00713437-CU-BC-CJC <br><br> **COMPLAINT FOR:** <br><br> (1) BREACH OF CONTRACT; <br> (2) PROMISSORY FRAUD; <br> (3) CONVERSION; <br> (4) VIOLATION OF PENAL CODE 496; and <br> (5) DECLARATORY RELIEF. <br><br> Judge Gregory H. Lewis |

Plaintiff ARB, Inc. ("**ARB**") alleges as follows on information and belief:

## THE PARTIES

1. ARB is, and at all material times mentioned herein was, a California corporation in good standing organized and existing under the State of California with its principal place of business in the County of Orange, State of California.

2. Defendant Always Protective Services, LLC ("**APS**") is, and at all material times mentioned herein was, a limited liability company organized and existing under the laws of the State of California.

3. Defendant Heather Magill ("**Heather**") is, and at all material times mentioned herein was, a resident of the State of California.

4. Defendant Tom Magill ("**Tom**") is, and at all material times mentioned herein was, a resident of the State of California.

5. Defendant Jeff Shea ("**Shea**") is, and at all material times mentioned herein was, a resident of the State of California.

6. Defendant Matthew A. Flamenco ("**Flamenco**") is, and at all material times mentioned herein was, a resident of the State of California.

7. **ARB** is unaware of the true names and capacities of defendants Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names. **ARB** will amend this complaint to show the true names and capacities of such fictitiously named defendants when the same have been ascertained or upon proof at trial. **ARB** is informed and believes and based thereon alleges that each of the fictitiously named defendants is legally responsible for the events and damages alleged herein.

8. At all relevant times certain of the defendants, including the Doe defendants, were acting as the partners, agents, servants, employees, alter egos, successors or predecessors in interest, or contractors of others of the defendants, and were acting within the course and scope of such relationship, with the knowledge, express or implied, of each such other named defendant.

9. Defendants **APS**, **Heather**, **Tom**, **Shea**, **Flamenco**, and Does 1 – 20, inclusive, will be referred to collectively as "**Defendants**."

## JURISDICTION AND VENUE

10. Venue is proper in the Superior Court of the State of California for the County of Orange under California Code of Civil Procedure Section 395 because Orange County is the county where the contract at issue was entered into and to be performed.

## OPERATIVE FACTS

11. In or about September 2012, ARB retained APS to provide site security services at various ARB construction sites throughout the greater San Diego area ("**Project**").

///

12. Subsequently thereafter, a dispute arose between **ARB** and **APS** over the quantity and calculation of **APS** charges related to security work done at the **Project**, as well as **APS'** representation of its disadvantaged business entity status. As such, **ARB** terminated its relationship with **APS** on or about April 1, 2013.

13. Upon termination, **APS** contended that it was owed the sum of $255,712.00 for services performed in connection with the **Project**, while **ARB** disputed this contention. ("**Dispute**").

14. In order to avoid litigation and resolve the **Dispute**, on or about November 22, 2013, **APS** and **ARB** entered into a settlement agreement and release whereby **APS**, in exchange for the negotiated sum of $135,360, agreed to settle and release any and all claims between it and **ARB** in connection with the **Dispute** and **Project** (the "**Release**"), including any claim of entitlement to the remaining sum of $120,352, i.e., the difference between $255,712 (what APS claimed it was owed) and $135,360 (the negotiated settlement amount). A true and correct copy of the **Release** is attached as Exhibit A.

15. The **Release** provision regarding the release and the consideration provided, specifically states:

> NOW, THEREFORE, in consideration for the payment of One Hundred Thirty-Five Thousand Three Hundred Sixty Dollars ($135,360.00) made by ARB, APS on behalf of itself and its past, present and future members, shareholders, partners, agents, servants, representatives, employees, officers, directors, affiliates, subsidiaries, successors and assigns ('Releasing Parties'), **hereby releases acquits and forever discharges ARB and its members, shareholders, partners, agents, servants, representatives, employees, officers, directors, insurers, successors and assigns, and all other persons, firms, corporations, associations, partnerships, parent companies, affiliates, subsidiaries and any other entity connection therewith (collectively 'Released Parties'), of and from any and all claims, actions, causes of action, demands, rights, damages, costs, expenses and/or compensation**, of any nature whatsoever which APS now has or which may hereafter accrue to APS, known or unknown, foreseen or unforeseen, on account of, **in connection with or in any way growing out of the Dispute, the services performed by APS for the Project, ARB's retention of APS for the Project, and ARB's termination of APS from the Project.**

(Exhibit A; emphasis added.)

16. Defendant **Shea**, **APS'** Executive Vice President, executed the **Release** in Orange County, California on **APS'** behalf as its authorized representative. The **Release** specifically affirms **Shea's** authority, stating:

> APS further agrees that **its authorized representative has read and fully understands this Release and is so authorized to execute same**, and in so doing APS further acknowledges that ARB is expressly relying upon the authority of such representation such that this Release will be binding upon APS and all Releasing Parties.

(Exhibit A; emphasis added.)

17. On or about December 26, 2013, approximately a month after the **Release** was executed, **ARB**, as part of its year-end accounting process, mistakenly issued and mailed a check payable to **APS** for the sum of $120,352, which is the difference between $255,712 (the sum APS claimed it was owed) and $135,360 (the sum for which **APS** agreed to settle the **Dispute**).

18. Worse yet, **APS**, with full knowledge of the **Release** and its waiver of any entitlement to the $120,352, proceeded to cash the check on or about January 2, 2014.

19. On or about January 7, 2014, immediately upon discovering this error, **ARB** contacted **APS** and advised **APS** of the mistake and requested that **APS** issue a reimbursement check to **ARB** in the amount of $120,352.

20. Inexplicably, on or about January 28, 2014, **APS** asserted for the first time that contrary to its written representations in the **Release**, **Shea** was not an authorized representative of **APS**. Although **ARB** reminded **APS** that **Shea** made a series of written and oral representations confirming his authority and that he was **APS'** Executive Vice President, **APS** continues to refuse to acknowledge **Shea's** authority, honor the **Release** terms, and return the $120,352.

21. As such, **ARB** has been left with no choice but to file this action and seek recovery of the monies **Defendants** wrongfully acquired and are wrongfully withholding.

## FIRST CAUSE OF ACTION

**[For Breach of Contract Against APS and Does 1 – 20]**

22. ARB repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

23. On or about November 22, 2013, **APS** entered into a **Release** as described herein and attached as **Exhibit A**.

24. **APS** breached and repudiated the **Release** in numerous material respects, including, without limitation, the following:

    a. by failing and refusing to honor the provisions of the **Release** in which **APS** releases and waives all further claims by **APS** against **ARB** in connection with the **Project** and **Dispute**, including any claim of entitlement to the sum of $120,352.

    b. by failing and refusing to remit to **ARB** the sum of $120,352; and

    c. by misrepresenting to **ARB** that the person signing the **Release** was authorized to do so and was acting within the full authorization of the **APS**.

25. **ARB** has fully performed all of its covenants and obligations under the **Release**, except those whose performance has been waived or legally excused.

26. Implicit in the **Release** is a covenant of good faith and fair dealing obligating the parties to act towards each other in good faith, to deal fairly with one another, to make all material disclosures, and not to do anything which might deprive the other of the expectations and benefits of the **Release** and obligating each party to do everything that the **Release** presupposes to accomplish its purposes. For the reasons stated herein, **APS** and Does 1 through 20, and each of them, have breached the covenant of good faith and fair dealing.

27. As a direct and proximate result of the **APS'** breaches as described herein, **ARB** has been damaged in an amount to conform to proof at trial, but not less than $120,352, plus interest as allowed by law, and attorneys' fees and costs as provided by law.

## SECOND CAUSE OF ACTION

[For Promissory Fraud (False Promise) Against All Defendants]

28. **ARB** repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

29. At the time **Shea** executed the **Release** on behalf of **APS** and as its Executive Vice President, he was acting within the scope of his employment as a director or officer of **APS**, and at the instruction and/or consent of **Heather**, **APS'** managing member and owner.

30. APS entered into the **Release** on November 22, 2013 with the intention of deceiving **ARB** into believing:

    a. APS would release and waive all further claims it had against **ARB** in connection with the **Project** and **Dispute**, including any claim of entitlement to the sum of $120,352; and

    b. **Shea** had the authority to bind **APS** to the Release.

31. The representations made by **Shea** on behalf of **APS**, and at **Heather's** instruction and/or with her consent, were false at the time they were made, **Shea, APS**, and **Heather** knew they were false, and they were made for the purpose of inducing **ARB** to immediately provide **APS** payment of $135,360 under the terms of the **Release**.

32. At the time **Shea** made these false representations on behalf of APS, **ARB** was ignorant of the true facts and believed the representations to be true. **ARB** in fact relied on the representations by immediately delivering to **Shea, APS,** and **Heather** payment of $135,360 pursuant to the **Release**. **ARB's** reliance was reasonable in that the false representations were made to it orally and in writing by **Shea,** who held himself out as **APS'** Executive Vice President with full authority to bind **APS** to the **Release,** and who had signed other documents on behalf of **APS** with **APS'** knowledge and without objection by **APS**.

33. If **ARB** had known the true facts it would not have acted as it did and specifically, would not have provided **APS** with payment and benefits under the **Release**.

34. **APS'** officers and/or directors **Heather** and **Shea** authorized, directed, and/or participated in **APS'** allegedly tortious conduct alleged herein, and as such, are personally liable, along with **APS**, for the tort of promissory fraud. (*See, Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490; *PMC, Inc. v. Kadisha* (2000) 78 Cal.App.4th 1368, 1380-1382.)

35. As a direct and proximate result of the fraud engaged in by **Shea, APS,** and **Heather, ARB** has been damaged in an amount to be determined at time of trial, but not less than $120,352, plus interest.

///

///

36. **Flamenco** and **Tom**, and DOES 1-20, were aware that **Shea, APS, Heather** and DOES 1-20, planned to, and did, engage in the foregoing wrongful conduct and they agreed with and intended that **Shea, APS, Heather**, and DOES 1-20, engage in the above wrongful conduct.

37. **Flamenco** and **Tom**, and DOES 1-20, gave substantial assistance and/or encouragement to **Shea, APS, Heather**, and DOES 1-20 for the purpose of facilitating the wrongful conduct alleged herein, including, but not limited to direct communications with **ARB** regarding the resolution of the **Dispute** and the **Release**, and that, as a result, **Flamenco** and **Tom**, and DOES 1-20's, conduct was a substantial factor in causing harm to **ARB**.

38. By conspiring with, and aiding and abetting **Shea, APS, Heather**, and DOES 1-20, as alleged herein, **Flamenco** and **Tom**, and DOES 1-20, have proximately caused harm to **ARB** and are therefore jointly and severally liable for such harm as **Shea, APS, Heather**, and DOES 1-20's, as co-conspirators and aider and abettors. **ARB** will seek damages, according to proof at trial, for all of the harm caused by the acts of **Shea, APS, Heather**, and DOES 1-20, and their co-conspirators and aider and abettors, **Flamenco** and **Tom**, and DOES 1-20.

39. **Shea, APS, Heather**, and DOES 1-20, and their co-conspirators and aider and abettors **Flamenco** and **Tom**, and DOES 1-20, engaged in despicable conduct and acted with willful, reckless and conscious disregard of the rights of **ARB**, and in doing the things herein alleged were guilty of oppression and malice. Accordingly, **ARB** seeks punitive and exemplary damages in an amount according to proof at trial.

### THIRD CAUSE OF ACTION

#### [For Conversion Against All Defendants]

40. **ARB** repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

41. **ARB** owned and had a right to possess the $120,352 check **APS** wrongfully deposited and cashed on or about January 2, 2014 without **ARB**'s consent.

42. **APS**' cashing and depositing of the $120,352 check and subsequent refusal to return the $120,352, intentionally and substantially interfered with **ARB**'s ownership and possession of said monies.

43. ARB was harmed as a result of APS cashing and depositing of the $120,352 check, and APS' conduct, was a substantial factor in causing said harm.

44. APS' officers and/or directors **Heather** and **Shea** authorized, directed, and/or participated in the allegedly tortious conduct alleged herein, and as such, are personally liable, along with **APS**, for the tort of conversion. (*See, Granoff v. Yackle* (1961) 196 Cal.App.2d 253; *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490.)

45. **Flamenco** and **Tom**, and DOES 1-20, were aware that **Shea, APS, Heather** and DOES 1-20, planned to, and did, engage in the foregoing wrongful conduct and they agreed with and intended that **Shea, APS, Heather**, and DOES 1-20, engage in the above wrongful conduct.

46. **Flamenco** and **Tom**, and DOES 1-20, gave substantial assistance and/or encouragement to **Shea, APS, Heather**, and DOES 1-20 for the purpose of facilitating the wrongful conduct alleged herein, and that, as a result, **Flamenco** and **Tom**, and DOES 1-20's, conduct was a substantial factor in causing harm to **ARB**.

47. By conspiring with, and aiding and abetting **Shea, APS, Heather**, and DOES 1-20, as alleged herein, **Flamenco** and **Tom**, and DOES 1-20, have proximately caused harm to **ARB** and are therefore jointly and severally liable for such harm as **Shea, APS, Heather**, and DOES 1-20's, as co-conspirators and aider and abettors. **ARB** will seek damages, according to proof at trial, for all of the harm caused by the acts of **Shea, APS, Heather**, and DOES 1-20, and his co-conspirators and aider and abettors, **Flamenco** and **Tom**, and DOES 1-20.

48. **Shea, APS, Heather**, and DOES 1-20, and his co-conspirators and aider and abettors **Flamenco**, and **Tom**, and DOES 1-20, engaged in despicable conduct and acted with willful, reckless and conscious disregard of the rights of **ARB**, and in doing the things herein alleged were guilty of oppression and malice. Accordingly, **ARB** seeks punitive and exemplary damages in an amount according to proof at trial.

### FOURTH CAUSE OF ACTION

### [For Violation of Penal Code 496 Against All Defendants]

49. ARB repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

50. Where one, through mistake or fraud receives money to which he is not entitled, he becomes the trustee of that money for the benefit of the one justly entitled to it. (Cal. Civ. Code § 2224.) In the course of, and by virtue of the above-averred acts, **APS** – at the authorization, direction, and/or with the participation of **Shea** and **Heather** – fraudulently converted and used the $120,352 for its own use and exclusive benefit and with the intent to deprive **ARB** of its use of the monies.

51. One who fraudulently appropriates property which has been entrusted to him is guilty of theft. (Cal. Pen. Code § 484.)

52. **APS, Shea,** and **Heather's** actions as described above constitute violations of Penal Code Section 496. As a result of **APS, Shea,** and **Heather's** violation of Penal Code section 496, **ARB** is entitled to a just award of treble damages ($361,052), costs of suit, and reasonable attorneys' fees. (Penal Code section 496(c); *Bell v. Feibush* (2013) 212 Cal.App.4th 1041.)

53. As a direct and proximate result of **APS, Shea,** and **Heather's** actions, **ARB** has suffered, and continues to suffer, actual damages in amount to be proven at trial, but which include, among other things, the value of the monies that it entrusted to **APS**, interest, attorneys fees, and costs.

54. **Flamenco** and **Tom**, and DOES 1-20, were aware that **Shea, APS, Heather** and DOES 1-20, planned to, and did, engage in the foregoing wrongful conduct and they agreed with and intended that **Shea, APS, Heather,** and DOES 1-20, engage in the above wrongful conduct.

55. **Flamenco** and **Tom**, and DOES 1-20, gave substantial assistance and/or encouragement to **Shea, APS, Heather,** and DOES 1-20 for the purpose of facilitating the wrongful conduct alleged herein, and that, as a result, **Flamenco** and **Tom**, and DOES 1-20's, conduct was a substantial factor in causing harm to **ARB**.

///
///
///
///

56. By conspiring with, and aiding and abetting **Shea, APS, Heather,** and DOES 1-20, as alleged herein, **Flamenco** and **Tom**, and DOES 1-20, have proximately caused harm to **ARB** and are therefore jointly and severally liable for such harm as **Shea, APS, Heather,** and DOES 1-20's, as co-conspirators and aider and abettors. **ARB** will seek damages, according to proof at trial, for all of the harm caused by the acts of **Shea, APS, Heather,** and DOES 1-20, and his co-conspirators and aider and abettors, **Flamenco** and **Tom**, and DOES 1-20.

### FIFTH CAUSE OF ACTION

[Declaratory Relief Against APS and Does 1-20]

57. An actual controversy as arisen between **ARB** and **APS** which requires a judicial declaration of their respective rights and liabilities.

58. In consideration for the negotiated sum of $135,360, **APS** executed the **Release** in which it agreed to settle and release any and all claims between it and **ARB** in connection with the **Dispute** and **Project**.

59. **APS** contends **Shea** did not have the authority to bind **APS** to the **Release**, and as such, **APS** is not bound by the **Release**.

60. **ARB** contends that the **Release** is valid and enforceable against **APS**.

61. A declaration of the Court is necessary and appropriate at this time to settle the matter in controversy among the parties involved and to avoid a multiplicity of actions.

62. Specifically, if it is determined that **APS** is not bound by the **Release**, **ARB** seeks a judicial declaration that **APS** shall return the consideration it received under the terms of the **Release**, i.e., $135,360.

### PRAYER FOR RELIEF

THEREFORE, plaintiff prays for judgment against defendants as follows:

1. <u>On the First, Second, and Third Causes of Action:</u>

    a. An award of all damages available in law and according to proof at trial; and

    b. for punitive and exemplary damages.

///

2.  **On the Forth Cause of Action:**

    a.  For treble damages according to proof at trial, but not less than $361,056.

3.  **On the Fifth Cause of Action:**

    a.  Alternatively, in the event **APS** is not bound the terms of the **Release**, a judicial declaration by the Court determining and declaring that **APS** must return the consideration it received under the terms of the **Release**, i.e., $135,360.

4.  **On All Causes of Action:**

    a.  For interest to the extent allowed by law;

    b.  for reasonable attorneys' fees to the extent allowed by law and/or the **Release**;

    c.  for costs of suit incurred; and

    d.  for such other and further relief as the Court deems just and proper.

Dated: March 28, 2014

RUTAN & TUCKER, LLP
PHILIP J. BLANCHARD
ELIOT M. HOUMAN

By: /s/ Philip J. Blanchard
Philip J. Blanchard
Attorneys for Plaintiff
ARB, INC.

EXHIBIT A

/ -
0.0 a00/00/00

RELEASE

THIS RELEASE is made effective this 22nd day of November, 2013 as between Always Protective Services LLC, located at 15068 Rosecrans Avenue, #164, La Mirada, California 90638 ("APS") and ARB, Inc., 26000 Commercentre Drive, Lake Forest, California 92630 ("ARB").

WHEREAS, ARB entered into a contract with Sempra Energy to perform work and provide services in connection with the San Diego Gas & Electric Retrofit and Short Notice Program in various locations throughout the greater San Diego area in California (the "Project").

WHEREAS, in connection with the Project, ARB retained APS to provide site security services at the relevant Project locations in 2012 and 2013. ARB terminated its relationship with APS on the Project on or about April 1, 2013.

WHEREAS, upon the termination of APS by ARB, APS contends it is owed the sum of $255,712.00 for services performed in connection with the Project, and ARB contends that APS is not entitled to that sum (the "Dispute").

WHEREAS, ARB and APS desire to fully and finally settle and compromise any and all claims between and among them in connection with the Dispute and APS's work on the Project.

NOW, THEREFORE, in consideration for the payment of One Hundred Thirty-Five Thousand Three Hundred Sixty Dollars ($135,360.00) made by ARB, APS on behalf of itself and its past, present and future members, shareholders, partners, agents, servants, representatives, employees, officers, directors, affiliates, subsidiaries, successors and assigns ("Releasing Parties"), hereby releases, acquits and forever discharges ARB and its members, shareholders, partners, agents, servants, representatives, employees, officers, directors, insurers, successors and assigns, and all other persons, firms, corporations, associations, partnerships, parent companies, affiliates, subsidiaries and any other entity connected therewith (collectively "Released Parties"), of and from any and all claims, actions, causes of action, demands, rights, damages, costs, expenses and/or compensation, of any nature whatsoever which APS now has or which may hereafter accrue to APS, known or unknown, foreseen or unforeseen, on account of, in connection with or in any way growing out of the Dispute, the services performed by APS for the Project, ARB's retention of APS for the Project, and ARB's termination of APS from the Project.

In further exchange for the consideration delineated hereinabove, APS and the Releasing Parties also agree to defend, indemnify and hold harmless ARB and the Released Parties from and against any and all claims, actions, causes of action, demands, fines, penalties, damages, costs and expenses (including attorney's fees) on account of, in connection with or in any way growing out of the Dispute, the services performed by APS for the Project, ARB's retention of APS for the Project, and ARB's termination of APS from the Project.

APS has received no inducement, promise or offer of any kind whatsoever except for the consideration delineated hereinabove, and this Release is executed without reliance on any statement or representation by the Released Parties.

It is understood and agreed that this settlement is the compromise of a disputed claim and that the consideration furnished is not to be construed as an admission of liability on the part of the Released Parties, and that the Released Parties have denied liability on the claim herein and intend merely to avoid litigation and buy their peace by this compromise. The compromise and settlement which forms the basis of this Release has been arrived at after thorough bargaining and negotiation and represents a final, mutually agreeable compromise.

APS AGREES THAT ANY AND ALL RIGHTS UNDER SECTION 1542 OF THE CIVIL CODE OF CALIFORNIA AND OF ANY SIMILAR LAW OF ANY STATE OR TERRITORY OF THE UNITED STATES ARE HEREBY EXPRESSLY WAIVED. SAID SECTION 1542 READS AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

APS agrees that this Release contains the entire agreement between the parties hereto and that the terms of this release are contractual and not a mere recital.

APS further agrees that its authorized representative has read and fully understood this Release and is so authorized to execute same, and in so doing APS further acknowledges that ARB is expressly relying upon the authority of such representative such that this Release will be binding upon APS and all Releasing Parties.

DATED: 11/22/2013

ALWAYS PROTECTIVE SERVICES, LLC

By: _____
JEFF
Name: ~~Jess~~ Shea
Title: Executive Vice President